LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: (212) 465-1188
*Attorneys for Plaintiff, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARITZA ZAPOTITLAN SANDOVAL, *on behalf of herself, FLSA Collective Plaintiffs and the Class,*<br><br>                    Plaintiff,<br><br>          v.<br><br>55 FULTON MARKET INC.<br>          d/b/a FULTON MARKET BY KEY FOOD,<br>OPEN MARKET 15 INC.<br>          d/b/a OPEN MARKET,<br>SNL MEAT & PRODUCE CORP<br>          d/b/a KEY FOOD,<br>RED APPLE TREE INC.<br>          d/b/a KEY FOOD,<br>DHY SONAMOO LLC,<br>          d/b/a KEY FOOD<br>JOUN CHIL AN,<br>HI JONG LEE, and<br>YEONG SHIM,<br><br>                    Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff, MARITZA ZAPOTITLAN SANDOVAL ("Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorney, hereby files this Class and Collective Action Complaint against Defendants 55 FULTON MARKET INC., d/b/a FULTON MARKET BY KEY FOOD, OPEN MARKET 15 INC., d/b/a OPEN MARKET, SNL MEAT &

PRODUCE CORP, d/b/a KEY FOOD, RED APPLE TREE INC., d/b/a KEY FOOD, DHY SONAMOO LLC, d/b/a KEY FOOD (collectively, "Corporate Defendants"), JOUN CHIL AN, HI JONG LEE, and YEONG SHIM ("Individual Defendants," and together with Corporate Defendants, "Defendants") and states as follows:

## <u>INTRODUCTION</u>

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that she and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime, due to time-shaving, (2) liquidated damages, and (3) attorneys' fees and costs.

2.      Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL"), that she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time-shaving, (2) statutory penalties, (3) liquidated damages, and (4) attorneys' fees and costs.

3.      Plaintiff further alleges that, pursuant to Internal Revenue Code, 26 U.S.C. § 7434, she and others similarly situated are entitled to damages and fees and costs in this matter because Defendants willfully filed fraudulent tax information forms with the Internal Revenue Service ("IRS").

4.      Plaintiff further alleges that Defendants breached their contract with Plaintiff and Class Members by failing to pay employer payroll taxes for Plaintiff and Class Members as required by the Federal Insurance Contribution Act ("FICA"). Plaintiff also alleges that, in retaining those sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiff and Class Members.

5.      Additionally, Plaintiff also brings individual claims that she was deprived of her

statutory rights as a result of Defendants' unlawful refusal of her right to take her earned sick time under the Earned Safe and Sick Time Act ("ESSTA"). Plaintiff seeks all applicable remedies under the law including (1) compensatory damages, (2) punitive damages, and (3) attorneys' fees and costs.

6.      Finally, Plaintiff brings individual claims that she was deprived of her statutory rights as a result of Defendants' unlawful discrimination on the basis of her gender and sex, in violation of New York State Human Rights Law, New York Executive Law § 296 ("NYSHRL"), and New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"), and seeks to recover (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

8.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

9.      Plaintiff MARITZA ZAPOTITLAN SANDOVAL is a resident of New York County, New York.

10.     Corporate Defendant 55 FULTON MARKET INC. is a domestic business corporation organized under the laws of New York State with a principal place of business and address for service of process located at 55 Fulton St, New York, NY, 10038.

11.     Corporate Defendant OPEN MARKET 15 INC. is a domestic business corporation organized under the laws of New York State with a principal place of business and address for

service of process located at 15 Williams St, New York, NY, 10005.

12.    Corporate Defendant SNL MEAT & PRODUCE CORP. is a domestic business corporation organized under the laws of New York State with a principal place of business and address for service of process located at 599 Ave Z, Brooklyn, NY, 11223.

13.    Corporate Defendant RED APPLE TREE INC. is a domestic business corporation organized under the laws of New York State with a principal place of business located at 169 Atlantic Ave, Brooklyn, NY 11201 and address for service of process located at P.O. Box 1144, 3 Allison Rd, Alpine, NJ, 07620.

14.    Corporate Defendant DHY SONAMOO INC.  is a domestic business corporation organized under the laws of New York State, with a principal place of business and address for service of process located at 95-30 Church Avenue, Brooklyn, NY, 11212.

15.    Individual Defendant JOUN CHIL AN is a principal of Corporate Defendants and exercises operational control of Corporate Defendants as it relates to all employees, including Plaintiff, FLSA Collective Plaintiffs, and the Class. Individual Defendant JOUN CHIL AN exercises -- and also delegates to managers and supervisors -- the power to: (i) fire and hire employees; (ii) supervise and control employee work schedules; (iii) determine the rate and method of pay; (iv) maintain employment records; and (v) otherwise affect the quality, terms and conditions of employment for Plaintiff. Individual Defendant JOUN CHIL AN has authority over all employee-related decisions, including payroll, personnel, and wage and hour policies concerning Plaintiff. Individual Defendant JOUN CHIL AN additionally exercises the authority to fire and hire, supervise and control work schedules, determine rate and method of pay, maintain employment records, and otherwise affect the terms and conditions of employment for managerial employees who directly supervise Plaintiff. Individual Defendant JOUN CHIL AN ensures that

managers implement Defendants' employment policies and pay practices and directs employees to effectively complete their job duties so that Corporate Defendants are operating efficiently and profitably.

16.    Individual Defendant HI JONG LEE is a principal of Corporate Defendants and has operational control of Corporate Defendants. Individual Defendant HI JONG LEE exercises -- and also delegates to managers and supervisors -- the power to: (i) fire and hire employees; (ii) supervise and control employee work schedules; (iii) determine the rate and method of pay; (iv) maintain employment records; and (v) otherwise affect the quality, terms and conditions of employment for Plaintiff. Individual Defendant HI JONG LEE has authority over all employee-related decisions, including payroll, personnel, and wage and hour policies concerning Plaintiff. Individual Defendant HI JONG LEE additionally exercises the authority to fire and hire, supervise and control work schedules, determine rate and method of pay, maintain employment records, and otherwise affect the terms and conditions of employment for managerial employees who directly supervise Plaintiff. Individual Defendant HI JONG LEE ensures that managers implement Defendants' employment policies and pay practices and directs employees to effectively complete their job duties so that Corporate Defendants are operating efficiently and profitably.

17.    Individual Defendant YEONG SHIM is the owner of Corporate Defendants and has operational control of Corporate Defendants. Individual Defendant YEONG SHIM exercises -- and also delegates to managers and supervisors -- the power to: (i) fire and hire employees; (ii) supervise and control employee work schedules; (iii) determine the rate and method of pay; (iv) maintain employment records; and (v) otherwise affect the quality, terms and conditions of employment for Plaintiff. Individual Defendant YEONG SHIM has authority over all employee-related decisions, including payroll, personnel, and wage and hour policies concerning Plaintiff.

Individual Defendant YEONG SHIM additionally exercises the authority to fire and hire, supervise and control work schedules, determine rate and method of pay, maintain employment records, and otherwise affect the terms and conditions of employment for managerial employees who directly supervise Plaintiff. Individual Defendant YEONG SHIM ensures that managers implement Defendants' employment policies and pay practices and directs employees to effectively complete their job duties so that Corporate Defendants are operating efficiently and profitably.

18.    The Defendants collectively own and operate a series of grocery stores at five (5) locations in New York City under the following trade names:

     i.    Fulton Market by Key Food, 55 Fulton St, New York, NY 10038 ("Fulton Market");

    ii.    Open Market 15, 15 William St, New York, NY 10005 ("Open Market");

   iii.    Key Food, 169 Atlantic Ave, Brooklyn, NY 11201 ("Key Food 169");

   iv.    Key Food, 599 Ave Z, Brooklyn, NY 11223 ("Key Food 599"); and

    v.    Key Food, 9530 Church Ave, Brooklyn, NY, 11212 ("Key Food Church").

(the "Grocery Stores").

19.    Defendants operate the Grocery Stores through the Corporate Defendants 55 FULTON MARKET INC., OPEN MARKET 15 INC., SNL MEAT & PRODUCE CORP, RED APPLE TREE INC., and DHY SONAMOO INC. as a single integrated enterprise. Specifically, the Grocery Stores are engaged in related activities, share common ownership and management, and have a common business purpose. The Grocery Stores are jointly owned and controlled by Individual Defendants JOUN CHIL AN, HI JONG LEE, and YEONG SHIM. Individual Defendants own and hold executive positions across all of the entities and have the power to make binding decisions for the entities.

20.     The Grocery Stores all share a similar inventory with a focus on fresh produce, have a larger area for pre-prepared food set out 'buffet style,' and have a similar theme and advertising.

21.     At all relevant times, Defendants utilized centralized labor, scheduling, and payroll systems which allowed Defendants' employees to work across all of the Grocery Stores and to be compensated for all work at all Grocery Store locations in one combined payment.

22.     Defendants regularly transfer supplies, products, and staff between all stores.

23.     Defendants' Grocery Stores share: (i) common ownership by Individual Defendants, (ii) an interrelation of operations as shown through the exchange of employees, supplies, and products between the Grocery Stores, and (iii) identical pay and labor policies across all locations.

24.     Defendants also maintain centralized operations for purchasing, marketing, and hiring. Across all Grocery Store locations, the various store owners hire employees, distribute promotional materials, purchase products, and negotiate collectively with suppliers.

25.     Defendants' Grocery Stores share an adequate number of commonalities and purposes that clearly classifies them as a "single integrated enterprise".

26.     At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL.

27.     At all relevant times, the work performed by Plaintiff and Class Members was directly essential to the business operated by Defendants.

28.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

29.     Although Plaintiff did not work at all the Grocery Stores, the Grocery Stores are appropriately named in this Complaint through the relevant Corporate Defendants described

above. Moreover, because of the shared ownership and management of the Grocery Stores by the three Individual Defendants, the Grocery Stores share the same illegal wage and hour policies. The Grocery Stores and the relevant Corporate Defendants are properly named on the basis of their outstanding liability to the Plaintiff and Class Members for whom Plaintiff seeks to represent.

## FLSA COLLECTIVE ACTION ALLEGATIONS

30.    Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt current and former employees of Defendants, (including but not limited to cashiers, stock persons, price coordinators, counter employees, janitors, porters, and baggers) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

31.    At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them for all hours worked, including the overtime thereof, due to a policy of timeshaving, as required under the FLSA. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

32.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## <u>RULE 23 ALLEGATIONS</u>

33.    Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt current and former employees of Defendants, (including but not limited to cashiers, stock persons, price coordinators, counter employees, janitors, porters, and baggers) employed by Defendants at Defendants' Grocery Stores on or after the date that is six (6) years before the filing of the Complaint (the "Class" or "Class Members").

34.    The Class Members are readily ascertainable. The number and identities of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

35.    The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, as the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. Plaintiff is a member of the Class.

36.    Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All Class Members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay them their wages for all hours worked due to Defendants' policy of time-shaving.

37.    Defendants' corporate-wide policies and practices affected all Class Members

similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

38.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

39.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their

interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

40.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

41.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

(a) Whether Defendants employed Plaintiff and the Class within the meaning of the NYLL;

(b) What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and the Class Members properly;

(c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

(d) Whether Defendants properly compensated Plaintiffs and Class Members their overtime rates at one-and-one-half-times their base hourly rates for all hours worked in excess of forty (40) each workweek under the NYLL;

(e) Whether Defendants failed to properly compensate Plaintiff and Class Members for all of their hours worked due to their policy of timeshaving;

(f)  Whether Defendants provided wage and hour notices to employees, including, among others, the rate of compensation and trade name of employer, pursuant to the requirements of the NYLL; and

(g)  Whether Defendants provided proper wage statements to employees as required under the NYLL.

## STATEMENT OF FACTS

### *Wage and Hour Claims:*

42.  Plaintiff SANDOVAL was hired by Defendants in or around November 2022 to work as a Cashier at Defendants' Fulton Market by Key Food located at 55 Fulton Street, New York, NY 10038. In or around October 2023 Plaintiff became a Price Coordinator for Defendants and held that title until the end of Plaintiff's employment on or around April 15, 2024.

43.  From in or around November 2022 to in or around July 2023, Plaintiff was scheduled to work five (5) days per week, Monday, Wednesday, Friday, Saturday, and Sunday, from 12:00 p.m. to 8:00 p.m. for a total of forty (40) hours per week. Throughout this time, Plaintiff was compensated at $15.00 per hour. At all times, Plaintiff punched in and out using a time clock.

44.  Plaintiff was also required to work fifteen (15) minutes to an hour past her scheduled shift every day. This time was spent performing closing duties, such as counting the money from her till. This work was required to be done before she left, but she also could not start counting until her shift was over. Defendants did not compensate Plaintiff for the hours she worked past her scheduled shift end. Plaintiff was not compensated for at least seventy-five (75) minutes of work per week.

45.  From in or around October 2023 to in or around to the end of her employment on or around April 15, 2024, Plaintiff was scheduled to work Monday through Saturday from 7:00

a.m. to 3:00 p.m. for a total of forty-eight (48) hours per week. Throughout this time, Plaintiff was compensated at $16.00 per hour. Plaintiff was regularly required to work 15 minutes past her scheduled shift each day to count money. Defendants did not compensate Plaintiff for the hours she worked past her scheduled shift end. As a result, Plaintiff was not compensated for ninety (90) minutes of work per week. Because this uncompensated time was over and above Plaintiff's regularly scheduled forty-eight (48) hours, all unpaid time was overtime.

46.    Throughout her employment, Plaintiff was only paid overtime when a manager asked her to stay for a specific overtime task. When she was asked to do this, Plaintiff was paid her overtime but only rounded to the lowest full hour. So, if Plaintiff worked for an extra hour and fifteen minutes, she would only be paid for one hour. Similarly, if she only worked an overtime assignment for forty-five minutes, she was not paid for that time at all. At times, Plaintiff was already off the clock when asked to continue working.

47.    Defendants' timeshaving policy was clearly intentional, as Defendants required Plaintiff, FLSA Collective Plaintiffs, and Class Members to clock in and out for every regularly scheduled shift. When Plaintiff was asked to stay for overtime, Defendants knew when Plaintiff was working hours above her regular shifts, apart from counting money at the till. However, when time came to pay their employees, Defendants intentionally shaved off all minutes beyond scheduled shifts and only paid overtime hours to the lowest whole hour, always to the detriment of the employee. Defendants also timeshaved Class Members in a similar way intentionally.

48.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and Class Members their proper wages for all hours worked due to Defendants' policy of time shaving, in violation of the FLSA and the NYLL.

49.    At all relevant times, Plaintiff was compensated by Defendants in cash and by

check. Plaintiff was paid by regular check for non-overtime hours and in cash for overtime hours. FLSA Collective Plaintiffs and Class Members were similarly paid both in cash and by check.

***Fraudulent Filing and Unjust Enrichment Claims:***

50.     At all relevant times, Defendants intentionally and willfully subjected Plaintiff, FLSA Collective Plaintiffs, and Class Members to (i) a policy of filing fraudulent tax information on their behalf, in violation of FICA, and (ii) a policy of unjustly enriching themselves at the expense of Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of New York law.

51.     At all relevant times, Plaintiff, FLSA Collective Plaintiffs, and Class Members were compensated by Defendants in both cash and personal checks. Throughout her employment, Plaintiff was paid her regular wages by check and her overtime compensation by cash.

52.     As a result of Defendants' paying Plaintiff, FLSA Collective Plaintiffs, and Class Members in cash and personal checks, Defendants failed to provide Plaintiff, FLSA Collective Plaintiffs, and Class Members with accurate IRS Forms W-2 for all the tax years of their employments and failed to properly record, account for, and report to the IRS all monies paid to Plaintiff, FLSA Collective Plaintiffs, and Class Members. In failing to account for these monies in their IRS filings, Defendants filed fraudulent information in violation of 26 U.S.C. § 7434. Under 26 U.S.C. § 7434(b), Defendants are liable to Plaintiff, FLSA Collective Plaintiffs, and Class Members for at least five thousand dollars per each fraudulent filing, which would have to be at least once per year.

53.     In violating the Internal Revenue Code by failing to provide proper W-2 forms, Defendants also breached their contracts with Plaintiff and Class Members to pay the employer's share of Social Security and Medicare taxes for each employee.

54.     Defendants also unjustly enriched themselves at the expense of Plaintiff and Class Members by retaining monies that should have been remitted to the IRS on Plaintiff's and Class Members' behalf.

55.     As a result, Plaintiff and Class Members will either (1) be liable to the IRS for the employer's share of FICA taxes or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

56.     The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiffs and Class Members 7.65% of all their earnings from Defendants beginning six years prior to the filing of this Complaint.

57.     Even if Defendants could show that they paid some employees a part of their wages in check and filed the appropriate W-2s for those checks, Defendants would remain liable to those employees for failing to pay FICA taxes on the cash portions of their wages.

***WTPA Claims:***

58.     At all relevant times, Defendants knowingly and willfully failed to provide Plaintiff and Class Members with any wage notices or wage statements in violation of the NYLL. Defendants failed to provide any wage statements because Defendants paid Plaintiffs and Class Members by cash and personal checks.

59. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> "Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees

to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights."

*Imbarrato v. Banta Mgmt. Servs*., 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

60. Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

61. Had Defendants provided any wage statements to Plaintiff and Class Members accurately listing the total number of hours Plaintiff and Class Members worked and their corresponding pay rates, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked, or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee worked

overtime. Either possibility would have allowed Plaintiff and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

62. The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

63. The direct effect of failing to state the number of hours an employee worked and the corresponding proper pay rate is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); T.F. v. N.F., 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

64. The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paysubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

65. "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

66. Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours and pay rates been reported for a given pay period, Defendants would have been forced to increase the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class

Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the omission prevented this outcome, it constitutes an injury sufficient to provide Plaintiffs with Article III standing.

67. Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> "The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

68. The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and Class Members rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class Members lost benefits by virtue of how Defendants reported their incomes, and how Defendants reported employees' incomes was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

69. Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may

receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore

are entitled to keep their Social Security accounts accurate.").

70. The *Calderon* court stressed that an employee's interest in ensuring that an employer

properly report the employee's income is amplified by the difficulty of persuading the government

to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively
> depends on reports that employers send to the government. A worker who seeks
> credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4),
> which will be hard to carry if the employer has not furnished the customary
> documentation. The government believes employers who report earnings, because
> these reports are costly to make--they entail paying a substantial tax. The
> government tends not to believe undocumented claims by employees, because these
> claims are essentially costless yet could establish entitlement to large pensions or
> disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets
> make the proper reports of their income. *Id.*

*Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

71. Here, the problem is not merely challenging but insurmountable. Plaintiff and Class

Members cannot even attempt to have their earnings report corrected because Defendants *did*

report portions of what they actually paid Plaintiff and Class Members. The problem, rather, is that

Plaintiff and Class Members were (i) underpaid and (ii) partially or wholly compensated in cash

and personal check. Yet the ultimate effect is the same—reduced social security eligibility.

Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid .

. . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to her social

security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS

74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

### *Gender Discrimination and Hostile Work Environment*

72.    Throughout her employment, Plaintiff suffered from Defendants fostering a hostile

work environment based on her sex and gender.

73.    Plaintiff SANDOVAL was regularly harassed and assaulted as a consequence of her sex by two of her managers, Produce Manager OSVALDO [Last name unknown] ("Manager OSVALDO") and Manager JESUS [Last name unknown] ("Manager Jesus").

74.    Manager OSVALDO would follow Plaintiff around the store, staring at her. Whenever he got close or passed by her, he would whisper inappropriate sexual remarks and insults to her. He would say such things as "I'm going to have you" or "I'm going to fuck you." When Plaintiff would respond by rejecting his advances or telling him off for his behavior, he would threaten her and tell her "If you were my woman, you would not talk to me like that." While Manager OSVALDO focused his attention on Plaintiff, he would also say similar things to many of the other female employees.

75.    Manager OSVALDO would also regularly talk about Plaintiff in a disrespectful manner and openly disparage her to co-workers, reiterating his assertions about desires for sexual interactions with Plaintiff.

76.    Plaintiff also endured sexual harassment from Manager JESUS. Manager JESUS would regularly hit on Plaintiff, asking her out on dates and wondering aloud "when are you going to leave your boyfriend for me." He would also assault Plaintiff, grabbing her by the hands or arms or intentionally touching her in more intimate areas such as her thighs or hips. He would do this during his attempted flirting as well as separately through the course of the day, and he continued his behavior in spite of Plaintiff's constant attempts to prevent it by telling him to stop or pushing him away.

77.    These interactions with both managers occurred almost daily throughout the course of Plaintiff's employment and characterized the general hostility of the work environment towards

women in general and Plaintiff in particular. Despite her complaints about both men, and her requests for them to alter their behavior, nothing ever changed for Plaintiff with regards to the sexual harassment she was forced to face at work. Both men were managers of the store and there was no higher authority to whom she could appeal. The owners knew about the unprofessional and harassing behavior of the two managers but had delegated all such concerns to the managers themselves.

78.     As a result of Defendants' discrimination, Plaintiff suffered from harassment, anxiety, and past and future emotional distress.

### *ESSTA Claims:*

79.     During Plaintiff SANDOVAL'S employment, Defendants engaged in adverse action against Plaintiff SANDOVAL by refusing to allow her to take sick leave, in violation of the ESSTA.

80.     Whenever Plaintiff would attempt to take her lawful sick leave, Defendants would refuse to allow her to take off. Even when she attempted to assert that she was taking *sick* leave, and not just general PTO, she was still met with a flat "No."

81.     As a result of Defendants' actions, Plaintiff suffered a loss of health and earnings as she was forced to choose between going to work while ill or losing her job. Defendants' refusal to allow Plaintiff SANDOVAL to take sick leave violates her rights under the ESSTA.

82.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and the Class in this litigation and has agreed to pay the firm a reasonable fee for its services.

**STATEMENT OF CLAIMS**

**COUNT I**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT**

83.     Plaintiff realleges and reavers all the foregoing allegations in this Complaint as if fully set forth herein.

84.     At all relevant times, upon information and belief, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff is a covered individual within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

85.     At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA.

86.     Upon information and belief, at all relevant times Corporate Defendants had gross revenues in excess of $500,000.

87.     At all relevant times, Defendants had a policy and practice of failing to pay wages to Plaintiff, FLSA Collective Plaintiffs, and Class Members for all regular and overtime hours worked due to illegal time-shaving.

88.     Records, if any, concerning the number of hours worked by Plaintiff and the actual compensation paid to Plaintiff, are in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

89.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all

hours worked.

90.     Defendants failed to properly disclose or apprise Plaintiff, FLSA Collective Plaintiffs and Class Members of their rights under the FLSA.

91.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff, FLSA Collective Plaintiffs and Class Members are entitled to recover liquidated damages pursuant to the FLSA.

92.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff, FLSA Collective Plaintiffs and Class Members suffered damages in an amount not presently ascertainable of unpaid wages plus an equal amount as liquidated damages.

93.     Plaintiff is entitled to an award of her reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

94.     Plaintiff realleges and reavers all the foregoing allegations in this Complaint as if fully set forth herein.

95.     At all relevant times, Plaintiff was employed by Defendants within the meaning of the New York Labor Law §§ 2 and 651.

96.     Defendants willfully violated the rights of Plaintiffs and Class Members by failing to pay them the proper compensation for all hours worked due to a policy of time-shaving.

97.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members with proper wage notice at date of hiring and annually thereafter, as required under the NYLL.

98.     Defendants knowingly and willfully operated their business with a policy of not

providing proper wage statements, as required under the NYLL. Defendants are required to provide an itemized listing of deductions take on each wage statement. Defendants failed to satisfy the requirements under the NYLL because the wage statements did not include all hours Plaintiff and Class Members worked.

99.     Due to Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants her unpaid wages, including overtime, due to timeshaving, unpaid wages, including overtime, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action, pursuant to the NYLL.

## COUNT III

## CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS UNDER THE INTERNAL REVENUE CODE, 26 U.S.C. § 7434(a)

100.     Plaintiff realleges and reavers all the foregoing allegations in this Complaint as if fully set forth herein.

101.     Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

102.     By failing to provide Plaintiff and Class Members with accurate IRS Forms W-2 for all of the tax years during which they were employed by Defendants and failing to properly record, account for, and report to the IRS all monies paid to Plaintiffs and Class Members as wages, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434.

103.     Defendants knew they had a legal duty not to misrepresent to the IRS the amount of money they were paying employees. Defendants' actions were willful violations of, or showed reckless disregard for, the provisions of the Internal Revenue Code.

104.    Pursuant to 26 U.S.C. § 7434(b)(3), Defendants are also liable to Plaintiffs for reasonable attorneys' fees.

**COUNT IV**

**BREACH OF CONTRACT**

105.    Plaintiff realleges and reavers all the foregoing allegations in this Complaint as if fully set forth herein.

106.    "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp. v. Jennifer Realty Co*., 98 N.Y.2d 144, 153, 773 N.E.2d 496, 500-501, 746 N.Y.S.2d 131, 135-136, 2002 N.Y. LEXIS 1579, *10-11 (2002).

107.    When Plaintiff and Class Members accepted offers of employment from Defendants, the parties entered a contract, and the covenant of good faith and fair dealing implicit therein required Defendants to pay Plaintiffs and Class Members in accordance with all applicable laws. This involved, *inter alia*, a duty by abide by the Internal Revenue Code and pay all required FICA taxes.

108.    Defendants breached this duty when they paid Plaintiff and Class Members in cash and failed to file proper W-2's. As a result, Plaintiffs and Class Members lost part of the benefit of the bargain for which they contracted, suffering a loss in the amount of the FICA taxes that Defendants should have paid on their behalf but did not.

## COUNT V

## UNJUST ENRICHMENT

109.    Plaintiff realleges and reavers all the foregoing allegations in this Complaint as if fully set forth herein.

110.    To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516, 973 NE2d 743, 950 NYS2d 333 (2012) (internal quotations omitted).

111.    Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contribution. Such came at the expense of Plaintiff and Class Members because they will either (1) be liable to the IRS for the employer's share or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

112.    Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Class Members.

## COUNT VI

## VIOLATION OF THE EARNED SAFE AND SICK TIME ACT

113.    Plaintiff realleges and reavers all the foregoing allegations in this Complaint as if fully set forth herein.

114.    Defendants knowingly and willfully failed to provide Plaintiff SANDOVAL with proper sick leave as required under the ESSTA.

115.    Defendants are employers covered by the ESSTA's sick leave provision as an "employer with less than ninety-nine (99) employees must provide up to forty (40) hours of annual

safe and sick time each calendar year." NY Lab. Law § 196-B(1)(b).

116.    Plaintiff was an employee under and covered by the ESSTA.

117.    Defendants are required to give employees sick leave upon oral or written request

for a "mental or physical illness, injury, health condition of such employee. . .regardless of whether

such illness, injury, or health condition has been diagnosed or requires medical care at the time

that such employee requests such leave." NY Lab. Law § 196-B(4)(a).

118.    EESTA grants the employee the right to seek relief "for each instance of safe/sick

time taken by an employee but unlawfully not compensated by the employer" and "for each

instance of safe/sick time requested by an employee but unlawfully denied by the employer and

not taken by the employee…" NYC ESSTA § 20-924.

119.    Due to Defendant's ESSTA violations, Plaintiff SANDOVAL seeks all applicable

remedies under the law, including compensatory damages, punitive damages, and attorneys' fees

and costs.

## COUNT VII

## VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

120.    Plaintiff realleges and reavers all the foregoing allegations in this Complaint as if

fully set forth herein.

121.    The New York State Human Rights Law ("NYSHRL") provides: "It shall be an

unlawful discriminatory practice: For an employer … because of an individual's age, race, creed,

color, national origin, sexual orientation, military status, sex, disability, predisposing genetic

characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to

bar or to discharge from employment such individual or to discriminate against such individual in

compensation or in terms, conditions or privileges of employment." New York State Executive

Law § 296(1)(a).

122.    Plaintiff was an employee and a qualified person within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

123.    Defendants violated Plaintiff's statutorily protected rights under NYSHRL, New York Executive Law §296, by engaging in discriminatory employment practices and subjecting her to a hostile work environment based on her sex and gender. This hostile work environment was created and fostered through pervasive and regular sexual harassment from her manager in the form of comments, and behavior, including unwanted sexual advances, directed towards Plaintiff.

124.    The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff, which led to her constructive termination.

125.    Defendants' conduct was intentional, malicious, willful, or in reckless disregard of Plaintiff's protected rights under the NYSHRL.

126.    As a result of Defendants' unlawful employment practices, Plaintiff sustained injury, including economic damages, the past and future emotional distress, and the costs of bringing this action.

127.    Due to Defendant's violation under the NYSHRL, based on gender discrimination and sexual harassment, Plaintiff is entitled to recover from Defendants: (1) economic damages, and (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## COUNT VIII

## VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

128.    Plaintiff realleges and reavers all the foregoing allegations in this Complaint as if

fully set forth herein.

129.    Plaintiff was an employee and a qualified person within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

130.    Defendants violated Plaintiff's statutorily protected rights under the NYCHRL, Administrative Code of the City of New York §8-107, by engaging in discriminatory employment practices and subjecting her to a hostile work environment based on her gender. This hostile work environment was created and fostered through the pervasive and regular sexual harassment in the form of comments and behavior directed towards Plaintiff by her two managers, OSVALDO and JESUS.

131.    The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff's, which led to her constructive termination.

132.    Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYCHRL.

133.    As a result of Defendants' unlawful employment practices, Plaintiff sustained injury, including economic damages, past and future emotional distress, and the costs of bringing this action.

134.    Due to Defendants' violation under the NYCHRL, based on gender discrimination and sexual harassment, Plaintiff is entitled to recover from Defendant: (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself, FLSA Collective Plaintiffs and Class Members, respectfully requests that this Court grant relief as follows:

a. A preliminary and permanent injunction to prohibit Defendants from violating the FLSA, NYLL, IRC, ESSTA, NYSHRL and NYCHRL;

b. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL, IRC, ESSTA, NYSHRL, and NYCHRL;

c. Appropriate equitable and injunctive relief to remedy Defendants' violations of federal law, including but not necessarily limited to an order enjoining Defendants from continuing its unlawful practices;

d. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

e. An award of unpaid wages, including overtime, due to time shaving under the FLSA and the NYLL;

f. An award of economic damages, compensatory damages, and punitive damages due under NYSHRL, and NYCHRL;

g. An award or economic damages, compensatory damages, and punitive damages due under the ESSTA;

h. Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiff's and Class Members' retirement through FICA contributions;

i. Disgorgement from Defendants of all illegally retained sums that should have gone towards Plaintiff's and Class Members' FICA contributions;

j. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages to the FLSA and the NYLL;

k.  An award of statutory penalties as a result of Defendants' failure to comply with wage notice and wage statement requirements under the NYLL;

l.  An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorney's and expert fees and statutory penalties;

m.  Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

n.  Designation of this action as a class action pursuant to F.R.C.P. 23;

o.  Designation of Plaintiff as Representative of the Class; and

p.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable as of right by jury.

Respectfully submitted,

Dated: January 8, 2025                    By:    */s/ C.K. Lee*
New York, NY                                 C.K. Lee, Esq.
                                             LEE LITIGATION GROUP, PLLC
                                             C.K. Lee (CL 4086)
                                             Anne Seelig (AS 3976)
                                             148 W 24th St., 8th Floor
                                             New York, NY 10011
                                             Tel.: 212-465-1188
                                             Fax: 212-465-1181
                                             *Attorneys for Plaintiff, FLSA Collective*
                                             *Plaintiffs, and Class Members*